JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, William K. Dandridge, appeals his conviction in the Cuyahoga County Court of Common Pleas, Criminal Division, which found him guilty of one count of disruption of public service, in violation of R.C. 2909.04, a felony of the fourth degree, and sentenced him to 17 months at the Lorain Correctional Institution.
 {¶ 2} The instant matter stems from an altercation which occurred on the morning of April 20, 2001. At trial, testimony revealed that Dandridge and the victim, Sharon Coleman, had been involved in a relationship, but because of Dandridge's verbally and physically abusive behavior, the parties separated in December 2000. Despite the separation, Dandridge continued to harass the victim by repeatedly calling her, knocking on her door, and stalking her in the hallways of her apartment.
 {¶ 3} On the night in question, Coleman went on a date with John Dale, Jr. At the end of the evening, the couple returned to Coleman's apartment, and almost immediately Dandridge began to harass them by placing numerous telephone calls to Coleman's apartment. The calls continued through the night, at which point Coleman called the authorities. The next morning, Coleman answered her door at approximately 8:00 a.m. only to find Dandridge standing in the doorway. Despite Coleman's attempts to prevent him from entering the apartment, Dandridge forced his way into the apartment and demanded that Dale leave. He then pushed Coleman on the couch and began to "manhandle" her.
 {¶ 4} During this time, Dale retreated to the bedroom in an attempt to call 9-1-1. Dandridge entered the bedroom and ripped the telephone from the wall in order to prevent Dale from contacting the police. Dale fled to the apartment manager's office to contact the police while Coleman remained in the apartment with Dandridge. As Dale fled, Coleman maced Dandridge in an effort to get him to leave. After being maced, Dandridge took Coleman's car and house keys and exited the apartment. Soon after, he returned to Coleman's apartment a second time, but was denied entry.
 {¶ 5} The police arrived to investigate the incident at approximately 8:40 a.m. Upon arrival, the police located Dandridge fleeing through the apartment's staircase. The police gave chase and were able to apprehend him on Miles Road. Despite the severity of the situation, Dandridge continued to be noncompliant with the police, shouting profanities and verbally abusing the police officers.
 {¶ 6} Finally, testimony at trial revealed that in addition to the stormy relationship previously noted between the victim and Dandridge, the victim had a protective order against Dandridge at the time of the altercation because of his menacing nature since the two ended their relationship.
 {¶ 7} Dandridge appeals his conviction and sentence and presents two assignments of error for this court's review. His first assignment of error states:
 {¶ 8} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIM.R. 29 MOTION FOR ACQUITTAL ON THE CHARGE OF DISRUPTION OF PUBLIC SERVICE WHERE THE EVIDENCE IN SUPPORT OF THIS OFFENSE WAS INSUFFICIENT."
 {¶ 9} The appellant argues that there was insufficient evidence to support the disruption of public service charge. In reviewing both the weight and sufficiency of the evidence, the same test is applied. Statev. Jenks (1991), 61 Ohio St.3d 259. The standard governing claims that a conviction is not supported by sufficient evidence has been summarized inState v. Martin (1983), 20 Ohio App.3d 172, as follows:
 {¶ 10} "As to the claim of insufficient evidence, the test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence." Id. at 175.
 {¶ 11} R.C. 2909.04 defines the crime of disrupting public services and provides as follows:
 {¶ 12} "(A) No person, purposely by any means, or knowingly by damaging or tampering with any property, shall do any of the following:
 {¶ 13} "(1) Interrupt or impair television, radio, telephone, telegraph, or other mass communications service, or police, fire, or other public service communications, or radar, loran, radio or other electronic aids to air or marine navigation or communications, or amateur or citizens band radio communications being used for public service or emergency communications;
 {¶ 14} "(2) Interrupt or impair public transportation, including without limitation school bus transportation, or water supply, gas, power, or other utility service to the public;
 {¶ 15} "(3) Substantially impair the ability of law enforcement officers, firemen, or rescue personnel to respond to an emergency, or to protect and preserve any person or property from serious physical harm." (Emphasis added.)
 {¶ 16} Based on our review of the record sub judice, the prosecution presented sufficient evidence from which the trial court could reasonably conclude the appellant purposely or knowingly damaged or tampered with the victim's telephone, which substantially impaired the ability of law enforcement officers to protect and preserve any person or property from serious physical harm. The evidence and reasonable inferences drawn therefrom, when viewed in the light most favorable to the prosecution, reveal the appellant purposely, with specific intent, disconnected access to telephone service at the victim's apartment and prevented the making of an emergency telephone call to the police or telephone call to anyone else for assistance while he was attacking the victim.
 {¶ 17} At trial, Dale testified that he went to the bedroom to dial 9-1-1 and that the appellant followed him into the room and ripped the telephone line from the wall. At this point, Dale fled to the apartment manager's office in an effort to contact the authorities. Additionally, the testimony is unclear as to whether the appellant succeeded in disconnecting the telephone line before a successful call was placed to the authorities or whether the authorities were contacted via the manager's office. As such, it was left to the trier of fact to determine whether or not the appellant purposely, with specific intent, disconnected access to telephone service and prevented the making of an emergency 9-1-1 call to the authorities. Clearly, the jury determined that the necessary elements had been met in returning a verdict of guilty.
 {¶ 18} In State v. Bridgeman (1978), 55 Ohio St.2d 261, the Ohio Supreme Court established that a trial court may not grant a Crim.R. 29(A) motion for acquittal where the evidence adduced at trial shows that reasonable minds can reach different conclusions as to whether the elements of a charged offense have been proven beyond a reasonable doubt. The credibility of the testimony and the weight of the evidence are primarily matters for the trier of fact. State v. DeHass (1967),10 Ohio St.3d 353, 363. As this court has stated in State v. Thompson
(Apr. 23, 1998), Cuyahoga App. No. 72044: "The fact-finder, being the jury (in the case) or the trial judge (in a waiver), occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witnesses and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a herculean endeavor."
 {¶ 19} In light of the overwhelming evidence, we cannot conclude that the lower court erred in denying the appellant's Crim.R. 29 motion for acquittal. Therefore, the appellant's first assignment of error is not well taken.
 {¶ 20} The appellant's second assignment of error states:
 {¶ 21} "II. THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO SEVENTEEN MONTHS OF INCARCERATION."
 {¶ 22} The appellant argues that the lower court's reliance on two sentencing factors, when only one is appropriate, undermines the validity of the sentencing guidelines and renders it contrary to law. Moreover, the appellant argues there is a presumption of community control sanctions for a conviction of a fourth degree felony.
 {¶ 23} R.C. 2929.13(B)(2)(a) authorizes a trial court to impose a sentence of incarceration for a felony of the fourth or fifth degree if it finds any of the factors listed in R.C. 2929.13(B)(1). R.C. 2929.13(B) provides the basic standards for sentencing fourth and fifth degree felony offenders. It states:
 {¶ 24} "(1) Except as provided in division (B)(2), (E), (F), or (G) of this section, in sentencing an offender for a felony of the fourth or fifth degree, the sentencing court shall determine whether any of the following apply:
 {¶ 25} "(a) In committing the offense, the offender caused physical harm to a person.
 {¶ 26} "(b) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person with a deadly weapon.
 {¶ 27} "(c) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person, and the offender previously was convicted of an offense that caused physical harm to a person.
 {¶ 28} "(d) The offender held a public office or position of trust and the offense related to that office or position; * * *
 {¶ 29} "(e) The offender committed the offense for hire or as part of an organized criminal activity.
 {¶ 30} "(f) The offense is a sex offense that is a fourth or fifth degree felony * * *
 {¶ 31} "(g) The offender previously served a prison term.
 {¶ 32} "(h) The offender committed the offense while under a community control sanction, while on probation, or while released from custody on a bond or personal recognizance.
 {¶ 33} "(i) The offender committed the offense while in the possession of a firearm.
 {¶ 34} "(2) (a) If the court makes a finding described in division (B)(1)(a), (b), (c), (d), (e), (f), (g), or (h) of this section and if the court, after considering the factors set forth in section 2929.12
of the Revised Code, finds that a prison term is consistent with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code and finds that the offender is not amenable to an available community control sanction, the court shall impose a prison term upon the offender."
 {¶ 35} R.C. 2929.13 does not create any explicit presumption in favor of either community control sanctions or imprisonment for fourth or fifth degree felony offenders. R.C. 2929.19(B)(2)(a) demands that the trial court "shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 {¶ 36} "* * * if it imposes a prison term for a felony of the fourth or fifth degree * * * its reasons for imposing the prison term, based upon the overriding purposes and principles of felony sentencing set forth in section 2929.11 of the Revised Code, and any factors listed in divisions (B)(1)(a) to (h) of section 2929.13 of the Revised Code that it found to apply relative to the offender."
 {¶ 37} The trial court must state its reasons for imposing a prison term for a fourth or fifth degree felony. Those reasons must be based on (1) the overriding purposes and principles of felony sentencing under R.C. 2929.11 and (2) any factors in 2929.13(B)(1)(a) to (h) that the court finds applicable. The requirement that the trial court state reasons demands that the court's finding must be something more than a "note that [the court] engaged in the analysis." State v. Edmonson(1999), 86 Ohio St.3d 324, 326, 1999 Ohio 110. While it may be the better practice "for the trial court to state its reasons for imposing a prison term in the judgment entry," State v. Jordan, (Nov. 12, 1998) Cuyahoga App. No. 73493, there is no requirement that the court's reasons must be in writing.
 {¶ 38} In the case at hand, the lower court specifically noted that the appellant has two prior felony convictions; at least four misdemeanor convictions; that the victim suffered bodily harm as a result of the offense; that the appellant has previously served a term of incarceration; that the appellant has a history of criminal convictions; that the appellant has not responded well to previous court sanctions; that at least one of the seriousness factors is present; and that the appellant has previous probation violations. It is undisputed that the lower court recognized and stated the sentencing factors applicable to the case at hand. Thus, there was no abuse of discretion in sentencing the appellant to 17 months of incarceration for the crime in which he was convicted. Therefore, the appellant's second assignment of error is not well taken, and the judgment of the trial court is hereby affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., AND JAMES J. SWEENEY, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).